WEIGHT WATCHERS OF GREATER WASHINGTON STATE, INC. and Weight Watchers International, Inc., Plaintiffs,

v.

FEDERAL TRADE COMMISSION, et al., Defendants.

No. C93–534R.

United States District Court, W.D. Washington.

Aug. 9, 1993.

Peter D. Byrnes, Byrnes & Keller, Seattle, WA, for plaintiffs.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Lawrence DeMille–Wagman, Federal Trade Com'n, Office of General Counsel, Washington, DC, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on defendants' motion to dismiss. Having reviewed the motion, together with all materials filed in support and in opposition, the court finds and rules as follows:

## I. BACKGROUND

In March, 1990, the Federal Trade Commission (hereinafter FTC or Commission) began an industry-wide investigation into advertising practices in the weight loss industry. Plaintiffs Weight Watchers of Greater Washington State, Inc. and Weight Watchers International, Inc. claim that the Commission targeted only mainstream weight loss companies, and that the companies were presented with uniform, industry-wide, non-negotiable consent orders, which were tailored neither to the characteristics of their particular weight loss programs, nor to particular facts which emerged from the investigations. Amended Complaint for Declaratory Judgment and Other Relief (Complaint) at ¶ 12.

In August, 1992, Weight Watchers International joined with four other members of the weight loss industry to petition the FTC to commence a Trade Regulation Rule proceeding, and to formulate advertising rules which would pertain to the entire weight loss industry. Complaint at ¶ 13.[1] The petitioners argued that in the proposed consent orders submitted to weight loss companies, the Commission had altered various advertising rules currently in force. For example, petitioners argued, the consent orders required that all claims of success be supported by scientific evidence, whereas previously a "reasonable basis" for support had been sufficient. Additionally, according to petitioners, the consent orders required that advertising testimonials typify the experiences of a majority, rather than merely a "significant portion" of the participants in a weight loss program. *See* Petition to Commence a Trade Regulation Rule Proceeding to Establish Advertising Standards for the Weight Loss Industry (Petition), attached as Exh. 1 to Complaint. According to petitioners, such changes could properly be accomplished only through rulemaking, and not through case-by-case proceedings. Petitioners further alleged that they were placed at a competitive disadvantage by the Commission's selective approach, which left non-mainstream weight loss companies unregulated. Therefore, petitioners requested that the Commission com-

1. Weight Watchers of Greater Washington State joined the petition on March 24, 1993. Plaintiffs are hereafter referred to collectively as "Weight Watchers."

mence rulemaking, since this would allow members of the weight loss industry to participate in the formulation of new standards, and would even the playing field between petitioners and those members of the industry not targeted by the Commission's investigations.

On March 24, 1993, the Commission denied the petition to commence rulemaking, setting forth its reasons in a 14–page letter addressed to Weight Watchers' counsel. Exh. 5 to Complaint. On April 16, 1993, Weight Watchers initiated the present action against the FTC and its five individual Commissioners. Count I of Weight Watchers' Complaint seeks a declaration that the Commission abused its discretion by denying the petition to engage in rulemaking. Count I also seeks a decree requiring the Commission to commence rulemaking proceedings, and an injunction staying the Commission's investigation of Weight Watchers, together with any related action, pending the outcome of rulemaking proceedings. Complaint at ¶ 30. Count II of the Complaint alleges that the Commission has deprived plaintiffs of their Fifth Amendment due process rights by following an unwritten policy which is contrary to the guidelines in the Commission's own Operating Manual. Complaint at ¶ 32.

The Commission now moves to dismiss the complaint for lack of subject matter jurisdiction. The Commission's attack on the jurisdictional basis of Weight Watchers' complaint is two-pronged. First, the Commission argues that the court is without power to enjoin or even to review the ongoing investigations because those investigations do not constitute final agency action. Second, the Commission argues that the court may not review the denial of the rulemaking petition, because the decision whether or not to engage in rulemaking is left solely to agency discretion.[2]

## II. DISCUSSION

### A. *Review of Ongoing Investigations*

In response to the FTC's argument that ongoing investigations are unreviewable and may not be enjoined, Weight Watchers explains that its Complaint seeks only *declaratory* relief relating to the Commission's refusal to engage in rulemaking; that the rulemaking petition submitted to the Commission is entirely distinct from the investigations; and that the request, made in the Complaint, that the court stay all investigations relating to Weight Watchers is merely a suggestion that such a stay might be appropriate as a type of ancillary relief. Weight Watchers explains that the Commission "wholly mischaracteriz[es]" the Complaint as a request to enjoin an ongoing investigation. Weight Watchers' Memorandum at p. 2.

Given Weight Watchers' clarification of its position, the court finds it unnecessary to dwell at any great length on the law pertaining to judicial review of FTC complaints and investigations. Since that law does have some bearing on the more seriously disputed issues addressed below, however, an abbreviated discussion is in order.

The seminal case in this area is *Federal Trade Commission v. Standard Oil Co. of Cal.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), in which an oil company sought judicial review of the FTC's issuance of a complaint: the company argued that the Commission had never possessed the prerequisite "reason to believe" that a violation had occurred. The Supreme Court, however, declined to reach the merits, agreeing with the Commission that issuance of a complaint is not "final agency action" under § 10(c) of the APA, 5 U.S.C. § 704, and hence is not reviewable. The Court reasoned, *inter alia,* that issuance of a complaint has no legal effect on the target company; that judicial review at such an early stage would unduly interfere with agency activities; and that the

---

**2.** Weight Watchers disputes the correctness of the jurisdictional label the Commission has affixed to the latter argument, and suggests that the issue raised here concerns the proper standard of review, rather than the existence of subject matter jurisdiction.

The court finds it unnecessary to resolve this dispute over doctrinal categories. As set forth more fully below, the court finds that the dispositive issue on this motion is neither subject matter jurisdiction as framed by the Commission, nor standard of review, as argued by Weight Watchers, but rather justiciability.

burden of litigation caused by issuance of a complaint, while appreciable, is nevertheless insufficient to transform mere initiation of a proceeding into final agency action. 449 U.S. at 242–43, 101 S.Ct. at 494–95.

The continuing force of *Standard Oil* was recently made clear in *Ukiah Valley Medical Center v. Federal Trade Commission,* 911 F.2d 261 (9th Cir.1990). In that case, the Ninth Circuit emphasized that administrative orders are not reviewable " 'unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.' " 911 F.2d at 264, quoting *Chicago & S. Air Lines v. Waterman S.S. Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948). The Ninth Circuit also reiterated that the fact that the defendant company must appear in an administrative proceeding does not mean that initiation of that proceeding is final agency action. 911 F.2d at 264. In the present case, where no complaint has yet been issued, and where Weight Watchers has not even been required to appear, there can be no question that the court is precluded from reviewing or enjoining the ongoing investigations.

### B. *Review of the Commission's Refusal to Commence Rulemaking*

The more seriously disputed question in this case is whether the court has authority to compel the FTC to engage in rulemaking. The cases cited and the arguments made by the parties arise out of two significantly distinct procedural contexts. In the interest of clarity, the court will consider these two lines of authority separately.

#### 1. Cases Arising from Adverse Adjudications

Weight Watchers relies most heavily on *Ford Motor Co. v. Federal Trade Commission,* 673 F.2d 1008 (9th Cir.1981), *cert. denied,* 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 394 (1982), in which the Ninth Circuit, vacating an order entered by the FTC, held that the agency's decision to proceed by adjudication instead of by rulemaking was inappropriate. The court reasoned that an agency adjudication is impermissible when it changes existing law, thereby depriving defendant of the notice which it would have had if there had already been a rule prohibiting its conduct, and when the rule which has been altered is a rule of widespread application. 673 F.2d at 1010.

■ Subsequent Ninth Circuit law, as the Commission points out, has limited the holding of *Ford.* Thus in *Cities of Anaheim, Riverside, Banning, Colton and Azusa, California v. FERC,* 723 F.2d 656, 659 (9th Cir. 1984), the Ninth Circuit, citing *NLRB v. Bell Aerospace,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974) stated that "administrative agencies are free to announce new principles during adjudication." *See also Union Flights, Inc. v. Administrator, F.A.A.,* 957 F.2d 685, 688 (9th Cir.1992) (same); *Coos–Curry Electric Cooperative, Inc. v. Jura,* 821 F.2d 1341, 1346 (9th Cir.1987) (same). To be sure, these later Ninth Circuit cases, like *Ford* and the precedents on which it relied, recognize some limits on agencies' freedom to change the law through adjudication. First, an agency may not articulate new principles through adjudication if doing so would disadvantage those who had relied on the former rule. *Union Flights,* 957 F.2d at 688; *Coos–Curry,* 821 F.2d at 1346; *Cities of Anaheim,* 723 F.2d at 659. Second, the agency may not use adjudication to circumvent the APA's rulemaking procedures by, for example, amending a recently adopted rule, *see Cities of Anaheim,* 723 F.2d at 659, or by bypassing a pending rulemaking proceeding. *See Union Flights,* 957 F.2d at 689 (citing *Ford* ).

An attempt to apply these latter two exceptions in the present case immediately reveals the fallacy of Weight Watchers' reliance on the *Ford* line of cases.

##### a. *Detrimental reliance*

■ Under the first exception, the court must ask whether the Commission has "suddenly chang[ed] direction, to the detriment of those who have relied on past policy." *Cities of Anaheim,* 723 F.2d at 659. The change of direction Weight Watchers complains of is embodied in eleven consent orders—only three of which have been accepted—submitted by the Commission to various members

of the weight loss industry. At present, in the absence of any adjudication against Weight Watchers, there is simply no evidence that entry of the three orders (let alone the mere proposal of the other eight) has caused any harm to Weight Watchers.

The detriment caused by the mere *threat* of adjudication, of course, lies outside the province of judicial review. As *Standard Oil* and *Ukiah Valley* made clear, even where a company is actually involved in adjudication and is saddled with the burden of defending itself in an administrative proceeding, the initiation of the proceeding is not reviewable as final agency action. Plaintiffs may not subvert the holdings of these cases with an indirect attack on the FTC's pre-adjudication activities.

### b. Circumvention of rulemaking

■ A similar analysis applies under the second exception to agency discretion to proceed by adjudication—the rule that an agency may not use adjudication to circumvent the APA's rulemaking requirements. Again, the absence of an adverse adjudication is fatal: under *Standard Oil* and *Ukiah Valley,* the court is barred from determining whether the mere investigations circumvent rulemaking requirements. Nor may the court determine whether the consent orders— which arguably do constitute final agency action—represent a circumvention of those requirements: Weight Watchers has not shown that it has standing to litigate consent orders entered into by other parties. Standing requires a *personal stake* in the outcome of a controversy sufficient to warrant the litigant's invocation of federal court jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In the absence of an adverse adjudication, Weight Watchers has not demonstrated any such stake in the entry of the consent orders, or, consequently, in the question of whether or not such entry has circumvented rulemaking requirements. For these reasons, the court finds that Weight Watchers' reliance on *Ford* and related authorities is misplaced, and turns its attention to the second line of cases cited by the parties.

### 2. Cases Arising from Denial of Rulemaking Petitions

■ The cases in this second line arise not out of adverse adjudications, but rather out of agency denials of petitions to commence rulemaking. *See, e.g., WWHT, Inc. v. Federal Communications Commission,* 656 F.2d 807 (D.C.Cir.1981) (reviewing and upholding the FCC's denial of a rulemaking petition). Weight Watchers argues that these cases are directly applicable, since its Complaint seeks review of the FTC's March 24, 1993 denial of its rulemaking petition. The Commission, by contrast argues that the rejection of that petition is not reviewable, because the determination whether or not to engage in rulemaking is a matter committed to agency discretion.

The court finds it unnecessary to resolve this dispute. Even assuming the Commission's action were reviewable as an initial matter, since the gravamen of both Weight Watchers' complaint and the petition filed with the FTC is that the agency should engage in rulemaking because proceeding by adjudication is unfair, there is little for this court to evaluate until such an adjudication has taken place.[3] Nor may the court examine the purported unfairness of the investigations as a means of reviewing the denial of the rulemaking petition: *Standard Oil* and *Ukiah Valley* preclude such examination. Weight Watchers argues repeatedly that review of the petition is distinct from review of the investigations. But since the very premise of the petition is that rulemaking must be used *instead of* the investigatory tactics currently employed, the investigations and the desired rulemaking are inextricably intertwined.[4]

Because Weight Watchers' petition to commence rulemaking, if it is reviewable at all,

---

**3.** It is true that cases in which courts have reviewed denials of petitions to commence rulemaking generally do not involve adjudications; thus the lack of an adjudication in this case does not in and of itself present the barrier to review that it did under the post-*Ford* analysis discussed in the previous section. The difficulty in this case, however, is that plaintiff's complaint is based on alleged injuries caused by adjudicatory activities.

**4.** This reasoning pertains equally to Weight Watchers of Greater Washington State, despite plaintiffs' assertions that this entity has not been

would involve this court in precisely the kind of premature evaluation discussed in the preceding section—premature both because no relevant adjudication has yet taken place and because the Commission's preliminary investigations are not subject to judicial scrutiny as final agency action—the court finds that it is without jurisdiction to review the Commission's denial of the rulemaking petition.

### C. Weight Watchers' Constitutional Claim

■ Weight Watchers' final argument is that the jurisdictional limits discussed above do not apply to Count II of the Complaint because that count is based on an alleged constitutional violation. The court rejects this argument, finding that Count II fails to state a claim upon which relief may be granted. Weight Watchers' constitutional claim is that its due process rights were violated when the Commission adopted a covert policy against rulemaking, in violation of its own internal regulations. Weight Watchers' argument is based on *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), in which the Supreme Court affirmed a district court's holding that a covert policy adopted by the Social Security Administration deprived disability claimants of their right to due process. The claimants in *Bowen,* however, unlike Weight Watchers, clearly had a property interest (or in any event a potential property interest) in the benefits they were being denied. By contrast, no property interest is asserted in the present case. This is a fatal flaw, since such an interest is a prerequisite to the administrative due process claim asserted here. *See, e.g., Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The constitutional violation alleged in Count II therefore cannot salvage Weight Watchers' complaint. For this reason, and for all of the reasons stated above,

NOW, THEREFORE, defendants' motion to dismiss is GRANTED.

the target of any FTC investigation. The premise of *both* plaintiffs' complaint is that the Commis-

sion should engage in rulemaking because adjudication and investigation are inappropriate.