**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | No. 21-35121 |
| *Plaintiff-Appellant,* | D.C. No. 9:19-cv-00109-DLC |
| v. | |
| DEBRA ANNE HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior; MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service, | OPINION |
| *Defendants-Appellees,* | |
| STATE OF WYOMING; STATE OF IDAHO; WYOMING STOCK GROWERS ASSOCIATION; WYOMING FARM BUREAU FEDERATION; UTAH FARM BUREAU FEDERATION, | |
| *Intervenor-Defendants-Appellees.* | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted April 12, 2022
Seattle, Washington

Filed January 19, 2023

Before:  Danny J. Boggs,[*] Andrew D. Hurwitz, and
Jennifer Sung, Circuit Judges.

Opinion by Judge Hurwitz;
Dissent by Judge Sung

## SUMMARY[**]

### Final Agency Action

The panel affirmed, on different grounds, the district court's summary judgment against the Center for Biological Diversity in the Center's action petitioning to amend the Grizzly Bear Recovery Plan that the Secretary of the Interior adopted as a "recovery plan" for an endangered or threatened species under the Endangered Species Act ("ESA").

The U.S. Fish & Wildlife Service (the "Service") approved the original Grizzly Bear Recovery Plan in 1982 and revised it in 1993.  Since 1993, the Service has issued

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

several Plan Supplements that provide habitat-based recovery criteria for identified recovery zones.

The district court entered summary judgment against the Center because it found that the Plan was not a "rule" subject to a petition for amendment under 5 U.S.C § 553(e).  It also found that it lacked jurisdiction to review the denial of the petition under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(C), because the Center did not allege that the Service failed to perform any nondiscretionary duty.  The panel affirmed on the ground that Administrative Procedure Act ("APA") review was not available because, even assuming the Plan was a "rule," the denial of the Center's petition was not "final agency action."  5 U.S.C. § 704.

The Center filed this action seeking judicial review under the APA and the ESA, claiming that the Service failed to develop and implement a recovery plan that provided for the conservation and survival of the grizzly bear; violated its affirmative duty to conserve the grizzly bear by not pursuing additional recovery areas; and unreasonably denied the Center's petition to update the Plan.  On appeal, the Center did not challenge the district court's holding that it lacked ESA jurisdiction.  Because the Center did not claim that the Service's denial of its petition was otherwise reviewable by statute, the sole issue is whether denial of the petition is "final agency action."

Because the term "rule" under the APA is defined broadly, the panel assumed that a recovery plan fit under this broad umbrella.  *See* 5 U.S.C. § 551(4). The panel also assumed that an interested party could file a petition under § 553(e) to amend a recovery plan.

Pursuant to *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), an agency action is final if it both marks the consummation of the agency's decisionmaking process, and it determines rights or obligations from which legal consequences flow. Under the first *Bennett* criterion, the panel held that the Service plainly did not treat the 1993 Plan as the last step, where it repeatedly issued Plan Supplements. The panel further held that even assuming that the adoption of a recovery plan satisfied the first *Bennett* criterion, it did not satisfy the second criterion. The Service does not initiate enforcement actions based on recovery plans; recovery plans do not impose any obligation on or confer any right to anyone; and a recovery plan does not contain any binding legal obligations on the agency.

The panel concluded that a decision not to modify a plan was not a final agency action. Because the Center's suit did not challenge a final agency action, the district court was not authorized to review the denial of the petition under § 704 of the APA.

Judge Sung dissented. She disagreed with the district court's holding that the Recovery Plan was not a "rule" under the APA, and therefore not subject to a rulemaking petition, because recovery plans are "non-binding." She also disagreed with the majority's holding that even if the Recovery Plan was a "rule," the Service's denial of the Center's petition was not a final agency action because recovery plans are non-binding. She would hold that the text of the APA and precedent provide that the statutory definition of "rule" encompasses both binding and non-binding rules, and that both binding and non-binding rules are subject to rulemaking petitions. Further, an agency's denial of a rulemaking petition is final agency action, even where the underlying rule is non-binding. Judge Sung would

conclude that the Recovery Plan was a "rule" as that term is defined by the APA, and the Service's denial of the Center's rulemaking petition was a final agency action subject to judicial review. She would reverse and remand to the district court to review the denial of the rulemaking petition for abuse of discretion under the highly deferential arbitrary and capricious standard.

## COUNSEL

Eric R. Glitzenstein (argued), Center for Biological Diversity, Washington, D.C.; Collette L. Adkins, Center for Biological Diversity, Circle Pines, Minnesota; Kristine M. Akland, Akland Law Firm PLLC, Missoula, Montana; Andrea Zaccardi, Center for Biological Diversity, Victor, Idaho; for Plaintiff-Appellant.

Benjamin W. Richmond (argued), Devon Flanagan, Robert Lundman, and Andrew Mergen, Attorneys; Todd Kim; Assistant Attorney General; United States Department of Justice, Environment & Natural Resources Division, Washington, D.C.; Dana Jacobsen, Attorney, United States Department of the Interior, Office of the Solicitor, Washington, D.C., for Defendants-Appellees.

Travis S. Jordan (argued), Senior Assistant Attorney General; James C. Kaste, Deputy Attorney General, Wyoming Attorney General's Office, Cheyenne, Wyoming; Adrian Miller, Sullivan Miller Law PLLC, Billings, Montana; for Intervenor-Defendant-Appellee State of Wyoming.

Owen Moroney, Deputy Attorney General; Darrell Early, Natural Resources Division Chief; Lawrence G. Wasden,

Attorney General; for Intervenor-Defendant-Appellee State of Idaho.

William E. Trachman and Joseph A. Bingham, Mountain States Legal Foundation, Lakewood, Colorado, for Intervenors-Defendants-Appellees Wyoming Stock Growers Association, Wyoming Farm Bureau Federation, and Utah Farm Bureau Federation.

Katherine A. Meyer, Harvard Animal Law & Policy Clinic, Cambridge, Massachusetts; for Amici Curiae Law Professors Daniel J. Rohlf, Pat A. Parenteau, Oliver Houck, and Robert Percival.

## OPINION

HURWITZ, Circuit Judge:

The Endangered Species Act of 1973 ("ESA") requires the Secretary of the Interior to adopt a "recovery plan" for any endangered or threatened species. 16 U.S.C. § 1533(f). This case concerns the Grizzly Bear Recovery Plan ("Plan"). The Center for Biological Diversity petitioned to amend the Plan; after the petition was denied, the Center sought judicial review under the ESA and the Administrative Procedure Act ("APA"). As relevant to this appeal, the district court granted summary judgment against the Center because it found that the Plan was not a "rule" subject to a petition for amendment under 5 U.S.C. § 553(e). We affirm, albeit on different reasoning, concluding that APA review is not available because, even assuming the Plan is a "rule," the denial of the Center's petition was not "final agency action." 5 U.S.C. § 704.

I.

The ESA requires the Secretary to "determine whether any species is an endangered species or a threatened species." 16 U.S.C. § 1533(a)(1).  For each such species, the Secretary must "designate any habitat . . . which is then considered to be critical habitat."  *Id.* § 1533(a)(3)(A)(i). The ESA provides criteria for making endangered-status determinations and critical-habitat designations; a process by which interested parties may petition for listing, delisting, or revisions to species and habitat lists; and notice-and-comment requirements for any regulation proposed to implement a determination, designation, or revision.  *Id.* § 1533(b).  The Secretary must keep a list of endangered and threatened species and review those status designations at least once every five years.  *Id.* § 1533(c).  The Secretary must also issue regulations necessary to conserve such species, which may include prohibitions on certain activities such as transporting or selling endangered animals.  *Id.* § 1533(d); *see also id.* § 1538(a)(1).

The ESA also requires the Secretary to develop and implement "recovery plans" "for the conservation and survival of endangered species and threatened species."  *Id.* § 1533(f)(1).  Recovery plans must include "a description of such site-specific management actions as may be necessary to achieve the plan's goal"; "objective, measurable criteria" that will lead to the species' delisting; and "estimates of the time required and the cost" for measures and intermediate steps to achieve the plan's goal.  *Id.* § 1533(f)(1)(B).  The Secretary must "provide public notice and an opportunity for public review and comment" before approving a new or revised recovery plan, *id.* § 1533(f)(4), and "consider all information presented during the public comment period," *id.* § 1533(f)(5).  However, the ESA does not require the

Secretary to update recovery plans.

In 1975, the Fish and Wildlife Service[1] identified the grizzly bear of the 48 conterminous states, the *Ursus arctos horribilis*, as a threatened species. 40 Fed. Reg. 31734–36 (July 28, 1975). The Service approved the original Grizzly Bear Recovery Plan in 1982 and revised it in 1993. The Plan aims to "identify actions necessary for the conservation and recovery of the grizzly bear" which "ultimately will result in the removal of the species from 'threatened' status."

The Plan identifies recovery zones, or "areas needed for recovery of the species," and sets forth subgoals for each zone. It also addresses "other possible recovery areas throughout the historical range of the grizzly bear," and has subgoals for evaluating the feasibility of grizzly-bear recovery in those areas. Since 1993, the Service has issued several Plan "Supplements" that provide habitat-based recovery criteria for identified recovery zones. The Supplements detail priority recovery actions, which include the development of strategies, programs, data collection, and species monitoring efforts, but also suggest steps such as creating coordinated efforts with law enforcement, providing guidance to hunters, and refining procedures for managing nuisance bears.

Although the Plan and Supplements contain criteria that the Service believes will ultimately result in the grizzly bear's removal from the list of threatened species, satisfaction of those criteria does not compel delisting. Instead, if the Secretary ever concludes, based on "the best scientific and commercial data available," 16 U.S.C.

---

[1] The Service has been delegated responsibility to administer parts of the ESA. *See* 50 C.F.R. § 402.01(b).

§ 1533(b)(1)(A), that the species is no longer threatened because of any of the statutory factors, *id.* § 1533(a)(1), the agency must provide notice of a proposed delisting regulation and the opportunity to comment, *id.* § 1533(b)(5), and publish a final regulation to delist, *id.* § 1533(b)(6). The Service has sought to remove grizzly bears from the list of threatened species in the past, but the designation of populations of *Ursus arctos horribilis* as a threatened species remains in effect. *See Crow Indian Tribe v. United States*, 965 F.3d 662, 672 (9th Cir. 2020) (summarizing delisting efforts concerning the Yellowstone grizzly).

## II.

In June 2014, the Center for Biological Diversity filed a petition with the Service, asking it to

> meet its mandatory duty to develop a recovery plan for the grizzly bear, 16 U.S.C. § 1533(f)[,] by revising and updating its 1993 recovery plan for the grizzly bear (*Ursus arctos horribilis*) for the populations that were identified at the time the species was listed, and by identifying all additional geographic areas where recovery strategies are needed, to ensure full recovery of the species across its native range in the United States.

The Center contended that the agency had "failed to develop recovery strategies for ecosystems that still contain substantial and sufficient suitable habitat," leaving grizzly bears "endangered across significant portions of their range as a biological fact." The petition proposed recovery areas in Arizona, New Mexico, California, and Utah that it

contended could support grizzly-bear populations and urged the Service to "further evaluate the recovery potential of all of these areas" in a revised recovery plan.

The Service denied the petition, stating that neither the ESA nor the APA authorizes petitions to create or revise recovery plans. Although acknowledging that the APA permits the filing of a petition for issuance, amendment, or repeal of a "rule," 5 U.S.C. § 553(e), the Service stated that a recovery plan is not a "rule" under the APA. The Service added that it had satisfied its "statutory responsibilities for recovery planning and implementation for the grizzly bear" pursuant to 16 U.S.C. § 1533(f)(1), explaining that it had prioritized grizzly-bear recovery in locations with historical populations as of 1975 and where habitat and environmental conditions would support species recovery. The Service did not close the door on future revision of the Plan, noting that "any additional recovery planning is subject to Service prioritization and is discretionary."

The Center then filed this action seeking judicial review under the APA and the ESA, claiming that the Service failed to develop and implement a recovery plan that provided for the conservation and survival of the grizzly bear; violated its affirmative duty to conserve the grizzly bear by not pursuing additional recovery areas; and unreasonably denied the Center's petition to update the Plan.[2] The district court granted summary judgment to the Service and to state and private intervenors. The court agreed with the Service that because the Plan was not a "rule" under the APA, the Plan

---

[2] The Center also alleged that the agency had failed to prepare a timely five-year status review for the grizzly bear in violation of 16 U.S.C. § 1533(c)(2)(A). That claim was settled.

was not subject to a petition for amendment under 5 U.S.C. § 553(e).  It also found that it lacked jurisdiction to review the denial of the petition under the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(C), because the Center did not allege that the Service failed to perform any nondiscretionary duty.

### III.

### A.

In granting summary judgment, the district court held that the Plan was not an APA "rule" subject to a petition for amendment under 5 U.S.C. § 553(e).  Because the term "rule" under the APA "is defined broadly," *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95–96 (2015), we assume, as our dissenting colleague argues, that a recovery plan fits under this broad umbrella.  *See* 5 U.S.C. § 551(4) (defining "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy"); Dissent at Part I.  We also assume, as our dissenting colleague argues, that an interested party can file a petition under § 553(e) to amend a recovery plan.  *See* 5 U.S.C. § 553(e) ("Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."); Dissent at Part II.

But even given those assumptions, the APA grants the district court jurisdiction to review only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  On appeal, the Center does not challenge the district court's holding that it lacked ESA jurisdiction. Because the Center does not claim that the Service's denial of its petition was otherwise "made reviewable by statute,"

the sole issue for decision is whether denial of the petition is "final agency action." *Id.*

### B.

An agency action is "final" only if it both (1) "mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). "In determining whether an agency's action is final, we look to whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations of the subject party, or if immediate compliance with the terms is expected." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up). This requires "focus on the practical and legal effects of the agency action," not on labels, and finality is "interpreted in a pragmatic and flexible manner." *Id.* (cleaned up).

It is open to question whether the adoption of a recovery plan meets the first *Bennett* criterion—"consummation of the agency's decisionmaking process." 520 U.S. at 178 (cleaned up). The ESA requires a recovery plan to be developed using "the services of appropriate public and private agencies and institutions, and other qualified persons," and mandates, prior to final approval, "public notice and an opportunity for public review and comment on such plan." 16 U.S.C. § 1533(f)(2), (4). This process suggests that the issuance of a recovery plan is not a "tentative or interlocutory" action, but rather the agency's "arriv[al] at a definitive position." *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 578–79 (9th Cir. 2019)

(cleaned up).  But, on the other hand, the Service's plans for grizzly-bear recovery arguably "are only steps leading to an agency decision, rather than the final action itself."  *See Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999) (holding that monitoring and reporting "does not 'consummate' any agency process").  And, although "the Agency's own designation of its action" is not determinative, *Abramowitz v. EPA*, 832 F.2d 1071, 1075 (9th Cir. 1987), the Service plainly has not treated the 1993 Plan as the last step, as it has repeatedly issued Plan Supplements.

But, even assuming that the adoption of a recovery plan satisfies the first *Bennett* criterion, it does not satisfy the second.  The caselaw makes plain that adoption of a recovery plan is not agency action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett*, 520 U.S. at 178 (cleaned up).  "The Endangered Species Act does not mandate compliance with recovery plans for endangered species."  *Cascadia Wildlands v. Bureau of Indian Affs.*, 801 F.3d 1105, 1114 n.8 (9th Cir. 2015); *see also Conservation Cong. v. Finley*, 774 F.3d 611, 614 (9th Cir. 2014) (noting that although recovery plans "provide guidance for the conservation of [endangered and threatened] species, they are not binding authorities"); *Friends of the Wild Swan, Inc. v. Dir. of U.S. Fish & Wildlife Serv.*, 745 F. App'x 718, 721 (9th Cir. 2018) (concluding that recovery plans are not final agency actions because they do not "create any legal rights or obligations for the Service or any third parties").  The Service does not initiate enforcement actions based on recovery plans.  *Cf. Sackett v. EPA*, 566 U.S. 120, 126 (2012); *S.F. Herring Ass'n*, 946 F.3d at 580.  Nor do recovery plans impose any obligation on or confer any right to anyone.  *See Ukiah Valley Med. Ctr.*

*v. FTC*, 911 F.2d 261, 265 (9th Cir. 1990). Moreover, a recovery plan does not contain any "binding legal obligations to which [the agency] is subject." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1009 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 713 (2021); *see also Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019) (stating that courts must "make *Bennett* prong-two determinations based on the concrete consequences an agency action has or does not have as a result of the specific statutes and regulations that govern it").

The decision of the District of Columbia Circuit in *Friends of Blackwater v. Salazar*, 691 F.3d 428 (D.C. Cir. 2012), upon which the Center relies, actually makes our point. To be sure, that opinion emphasized that the ESA requires the Secretary to "implement" a recovery plan and that "the agency is obligated to work toward the goals set in its recovery plan." *Id.* at 437. But the court also stressed that a recovery plan is "a non-binding document," *id.* at 434, and therefore concluded that the Secretary was not prevented from removing a species from the endangered list simply because "several criteria in the agency's Recovery Plan for the species had not been satisfied," *id.* at 429, 436. Rather, the court explained:

> The Service fairly analogizes a recovery plan to a map or a set of directions that provides objective and measurable steps to guide a traveler to his destination. *Cf. Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 547 (11th Cir. 1996) (holding "recovery plans are for guidance purposes only"). Although a map may help a traveler chart his course, it is the sign at the end of the road, here the five

> statutory factors indicating recovery, and not
> a mark on the map that tells him his journey
> is over.   Moreover, as with a map, it is
> possible   to   reach   one's   destination—
> recovery of the species—by a pathway
> neither contemplated by the traveler setting
> out nor indicated on the map.

*Id.* at 434.

Thus, although the Service had the statutory obligation to draw up a roadmap for recovery of the grizzly bear, "legal consequences do not necessarily flow from that duty, nor do rights or obligations arise from it."  *See Ecology Ctr.*, 192 F.3d at 925.  Although the map the Service drew may well help the agency "chart [its] course," *Friends of Blackwater*, 691 F.3d at 434, adopting the map is not an agency action "by which rights or obligations have been determined, or from which legal consequences will flow," *Bennett*, 520 U.S. at 178 (cleaned up).  Nor does the Service have any statutory obligation to modify a recovery plan once adopted.   It follows that a decision not to grant a petition to modify a plan is not final agency action.

## C.

Our dissenting colleague argues that the denial of *any* petition filed under 5 U.S.C. § 553(e) is "final agency action" subject to judicial review under § 704.  Dissent at Part III.  But that is not what the APA says.  The APA does not provide that all agency denials of § 553(e) petitions are judicially reviewable.   Indeed, § 553 does not address judicial review at all.  Rather, judicial review is addressed in § 704, which, as relevant here, expressly limits review to "final agency action."  The denial of the Center's petition to

amend the Plan is not final agency action because, like adoption of the Plan itself, it does not change the Service's statutory obligations, alter the rights of the Center or any other third party, or give rise to any binding legal consequences. Nor does it "impose an obligation, deny a right, or fix *some* legal relationship." *Or. Nat. Desert Ass'n*, 465 F.3d at 987 (quoting *Ukiah*, 911 F.2d at 264). Rather, the Service's denial of the Center's petition "does not bind anyone to anything." *See S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 837–38 (9th Cir. 2021).

Instead of treating denials of rulemaking petitions as a species apart from other purportedly final agency actions, we evaluate the Service's denial of the petition to amend the Plan under the same test applicable to a "direct" challenge to the Plan. *See, e.g.*, *Friends of the Wild Swan*, 745 F. App'x at 719–20 (addressing complaint directly alleging various deficiencies in the bull trout recovery plan). We must "examine the concrete impact the [action] had on [petitioner] and its members—in short, none whatsoever." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004).

Then-Judge Roberts's opinion in *Independent Equipment Dealers Association* underscores the point. There, the petitioner challenged a letter from the EPA responding to a request that the agency confirm an interpretation of its emissions regulations. *See id.* at 421. The agency informed the petitioner that it did not agree with the proposed interpretation. *Id.* at 424–25. The D.C. Circuit held that the EPA letter was not reviewable agency action, noting that it "imposed no obligations and denied no relief," "[c]ompell[ed] no one to do anything," and "had no binding effect whatsoever." *Id.* at 427. So too here—the Service's unwillingness to expand its list of discretionary tasks and

non-binding criteria has none of the markers of a reviewable action.

The Center's cited authorities do not lead us to a contrary conclusion.  In *Massachusetts v. EPA*, for example, the Supreme Court held that the EPA's denial of a petition for the agency to issue mandatory regulations concerning greenhouse-gas emissions from new motor vehicles was "susceptible to judicial review."  549 U.S. 497, 510–11, 527 (2007).  But such a regulation, if adopted, would have clearly changed the legal rights and obligations of not only the EPA, but also motor-vehicle manufacturers.  The case does not displace *Bennett*'s limitation of APA judicial review to only those agency actions with legal consequences.

Similarly, *O'Keeffe's, Inc. v. U.S. Consumer Product Safety Commission*, 92 F.3d 940, 941 (9th Cir. 1996), involved review of the agency's denial of a petition to amend regulations that set "impact standards" for glass and glazing materials used in doors and other products.  We treated denial of the petition as "final agency action," *see id.* at 942, but unlike the situation before us, the agency's decision to change the list of materials subject to the impact standards directly affected the obligations of regulated parties, including the petitioner and its competitors.  *See id.* at 941; *see also id.* at 949 (Reed, J., dissenting).

The same is true of the other cases relied upon by the Center and the dissent.  *See Weight Watchers of Greater Wash. State, Inc. v. FTC,* 830 F. Supp. 539, 540–41 (W.D. Wash. 1993) (involving petition to regulate weight-loss advertising via rulemaking instead of adjudication), *aff'd in part, rev'd in part sub nom. Weight Watchers Int'l, Inc. v. FTC*, 47 F.3d 990 (9th Cir. 1995); *see also Coll. Sports Council v. Dep't of Educ.*, 357 F. Supp. 2d 311, 311 (D.D.C.

2005) (involving petition to repeal a policy interpretation that allegedly authorized gender-conscious capping or cutting of plaintiffs' male athletic programs), *aff'd in part, rev'd in part*, 465 F.3d 20 (D.C. Cir. 2006); *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 263 F. Supp. 2d 82, 126 (D.D.C. 2003) (same), *aff'd*, 366 F.3d 930 (D.C. Cir. 2004); *Cap. Network Sys., Inc. v. FCC*, 3 F.3d 1526, 1530 (D.C. Cir. 1993) (involving petition to enforce just, reasonable, and nondiscriminatory rates on carriers); *Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 2, 5–7 (D.C. Cir. 1987) (involving petition to amend regulations that limited the "soring" of horses); *WWHT, Inc. v. FCC*, 656 F.2d 807, 809, 816–18 (D.C. Cir. 1981) (involving petition to amend rules addressing cable carriage of subscription-television signals); *Nat. Res. Def. Council, Inc. v. SEC*, 606 F.2d 1031, 1036, 1043–47 (D.C. Cir. 1979) (involving petition to undertake rulemaking that would require corporate disclosure of environmental and equal-employment information).[3]    These cases involved agency action with legal consequences, and thus do not support the far-reaching proposition that the denial of a petition to amend a non-binding document is necessarily reviewable final agency action simply because it is styled as a petition filed under § 553(e).  Were that the case, the APA's requirement of final agency action would lose all meaning, as an applicant seeking review of agency decisions with no legally binding effect would merely have to style his request to the agency as a rulemaking petition.    That would abandon "the pragmatic approach we have long taken to finality."  *U.S.*

---

[3] The dissent's reliance on *ITT World Communications, Inc. v. FCC*, 699 F.2d 1219 (D.C. Cir. 1983), is similarly misplaced because the agency action at issue would have changed the FCC's legal authority.

*Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 599 (2016) (cleaned up).  Under that pragmatic approach, finality does not turn on labels, but rather on the "practical and legal effects" of a particular action.  *Or. Nat. Desert Ass'n*, 465 F.3d at 982 (cleaned up).

IV.

The Service's decision not to amend the Grizzly Bear Recovery Plan, like adoption of the Plan itself, is not an action "from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (cleaned up).  Because the Center's suit does not challenge final agency action, the district court was not authorized to review the denial of the petition under § 704 of the APA.

**AFFIRMED.**

---

SUNG, Circuit Judge, dissenting:

I respectfully dissent. It is undisputed that the Center for Biological Diversity filed a petition to amend the Grizzly Bear Recovery Plan, and that the U.S. Fish and Wildlife Service denied that petition. The Center seeks review of the denial of its rulemaking petition, claiming that the denial was arbitrary and capricious. Under longstanding precedent, an agency's denial of a rulemaking petition is final agency action subject to judicial review, pursuant to the Administrative Procedure Act. The district court nonetheless dismissed the Center's claim after concluding that the Recovery Plan is not a "rule" under the APA, and therefore not subject to a rulemaking petition, because recovery plans are "non-binding." The majority takes a different tack: They assume that the Recovery Plan is a "rule" and that the Center

had a right to petition for amendment of the Plan. But they conclude that the Service's denial of the Center's petition is not final agency action because recovery plans are non-binding.

I disagree with both the district court and the majority. As explained below, the text of the APA and precedent make clear that the statutory definition of "rule" encompasses both binding and non-binding rules, and that both binding and non-binding rules are subject to rulemaking petitions. Further, an agency's denial of a rulemaking petition is final agency action, even where the underlying rule is non-binding. By concluding otherwise, the majority opinion exacerbates confusion in this area of administrative law and creates an unwarranted barrier to judicial review.

## I.

The APA defines "'[r]ule' . . . broadly to include 'statement[s] of general or particular applicability and future effect' that are designed to 'implement, interpret, or prescribe law or policy.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95–96 (2015) (alteration in original) (quoting 5 U.S.C. § 551(4)). This statutory definition is so broad it "include[s] nearly every statement an agency may make." *Batterton v. Marshall*, 648 F.2d 694, 700 (D.C. Cir. 1980).

A recovery plan fits easily within that broad definition. The Endangered Species Act requires the Service to "develop and implement [recovery] plans . . . for the conservation and survival of endangered species and threatened species." 16 U.S.C. § 1533(f)(1). The Act also provides that each recovery plan shall, "to the maximum extent practicable," incorporate "site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," and "objective,

measurable criteria which, when met, would result in a determination . . . that the species be removed from the" endangered or threatened species list. 16 U.S.C. § 1533(f)(1)(B). *See also Friends of Blackwater v. Salazar*, 691 F.3d 428, 437 (D.C. Cir. 2012) ("[Section] 4(f)(1) of the Act imposes mandatory obligations upon the Secretary."); *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 111 (D.D.C. 1995), *amended by* 967 F. Supp. 6 (D.D.C. 1997) (concluding Service failed to meet obligation under the ESA to incorporate sufficient objective, measurable delisting criteria in Grizzly Bear Recovery Plan). "The Secretary, moreover, must implement the [recovery] plan." *Friends of Blackwater*, 691 F.3d at 437 (citing 16 U.S.C. § 1533(f)(1)).

Despite the breadth of the APA's definition of "rule," the district court concluded that a recovery plan cannot implement, interpret, or prescribe law or policy—and therefore cannot be a "rule"—because recovery plans are "non-binding."[1] That was error.

Under the APA, the term "rule" includes both binding rules (also known as "substantive" or "legislative" rules) and non-binding rules (interpretive rules, general statements of policy, and rules of agency organization, procedure, or

---

[1] *See, e.g.*, *Friends of Blackwater*, 691 F.3d at 432-34 (holding that Service did not violate ESA by delisting species when statute's delisting criteria were met, but recovery plan's delisting criteria were not); *Cascadia Wildlands v. Bureau of Indian Aff's*, 801 F.3d 1105, 1114 n. 8 (9th Cir. 2015) (noting "[i]t is undisputed that, generally, FWS recovery plans are not mandatory"). The parties dispute whether the prior cases regarding recovery plans establish that all recovery plans are non-binding in all respects, but there is no need to resolve that issue. As explained in this dissent, even assuming that the Grizzly Bear Recovery Plan is a non-binding, general statement of policy, it is still a "rule" under the APA.

practice). *See Perez*, 575 U.S. at 96.[2] As the Court explained in *Perez*, binding rules "have the force and effect of law" and must be issued through the notice-and-comment process prescribed by Section 4 of the APA, 5 U.S.C. § 553(b)(A). *Id.* (quotation marks and citation omitted). However, "[n]ot all 'rules' must be issued through the notice-and-comment process." *Id.* "Interpretative rules, general statements of policy, and rules of agency organization, procedure, or practice" are expressly exempt from the notice-and-comment requirement. *Id.*; 5 U.S.C. § 553(b)(A). *See also Gunderson v. Hood*, 268 F.3d 1149, 1153-54 (9th Cir. 2001) ("The APA requires that rules promulgated by administrative agencies undergo certain procedures unless those rules are 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'" (citing 5 U.S.C. § 551(4) (APA definition of rule) and 5 U.S.C. § 553(b)(3)(A) (APA notice-and-comment requirement))).

Because interpretive rules, policy statements, and agency procedure rules are exempt from the notice-and-comment requirement, they are, by definition, "non-binding." *See Perez*, 575 U.S. at 97 ("The absence of a notice-and-comment obligation makes the process of issuing interpretive rules comparatively easier for agencies than issuing legislative rules. But that convenience comes at a price: Interpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory

---

[2] *See also Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979) ("The central distinction among agency regulations found in the APA is that between 'substantive rules' on the one hand and 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice' on the other." (quoting 5 U.S.C. §§ 553(b), (d))).

process." (internal quotation marks and citation omitted)).[3] The non-binding status of interpretive rules, policy statements, and agency procedure rules, however, does not remove them from the broad definition of "rule."[4] *See Perez*, 575 U.S. at 95-96; *see also Thomas v. New York*, 802 F.2d 1443, 1446 n * (D.C. Cir. 1986). In *Thomas*, then-Judge Scalia addressed "the misconception that the classification of an agency statement as a *rule* depends upon whether it substantially affects the interests of private parties" and explained that, despite "somewhat misleading" past decisions, "other decisions and the APA itself make clear that the impact of an agency statement upon private parties is relevant only to whether it is the *sort* of rule that is a rule of procedure, or a general statement of policy, and thus does not require notice and comment, not to whether it is a rule at all." 802 F.2d at 1446 n * (emphases in original).

---

[3] Because of *Friends of Blackwater* and following cases, the district court and majority believe, and this dissent assumes, that recovery plans are non-binding. That characterization, however, may be overbroad or incorrect: Recovery plans are subject to a notice-and-comment process under the ESA. 16 U.S.C. § 1533(f)(4). In any event, the conclusion that recovery plans are "rules" that are subject to public participation through the petition process is consistent with that notice-and-comment requirement. "The essential purpose of according . . . notice and comment opportunities is to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies." *Batterton*, 648 F.2d at 703.

[4] The plain language of the APA makes clear that non-binding rules are still "rules." Section 553 applies only to "rules." If interpretive rules and policy statements were not "rules," then the express exemptions for interpretive rules and policy statements in subsections 553(b) (notice-and-comment requirement) and (d) (advance publication requirement) would be superfluous.

Recovery plans interpret and implement the requirements of the ESA, as well as prescribe law and policy, even though they are "non-binding." For example, the plan at issue here, the Grizzly Bear Recovery Plan, includes "demographic recovery criteria" for certain areas known to have been occupied by grizzlies. *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1020 (9th Cir. 2011). When the Service revised the Plan in 1993, "it delineated a 'Recovery Zone' for each region, defined as 'an area large enough and of sufficient habitat quality to support a recovered bear population within which habitat and population would be monitored.'" *Id.* "The revised Plan also included updated demographic recovery criteria," and "[h]abitat-based recovery criteria were appended to the Plan following a successful legal challenge." *Id.* (citing *Fund for Animals*, 903 F. Supp. at 96). The revised Plan further "mandated the development of a 'conservation strategy' for each grizzly population to guide long-term management after delisting." *Id.* "Pursuant to the Recovery Plan," the Service led efforts to establish an "inter-agency, multi-state blueprint for the long-term protection and management of a sustainable grizzly population," referred to as the "Final Conservation Strategy for the Grizzly Bear in the Greater Yellowstone Area." *Id.* at 1021. *See also Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 811 (9th Cir. 2008) ("FWS determined that delisting the tri-state murrelets was not warranted *because the interim delisting criteria in the Recovery Plan had not been met* and the threat situation has not changed in a way that would alleviate the threat to the species." (emphasis added) (internal quotation marks omitted)).

In sum, recovery plans are, by definition, agency statements that implement, interpret, and prescribe law and

policy. *See* 16 U.S.C. § 1533(f)(1). Therefore, they are "rules," as defined by the APA. 5 U.S.C. § 551(4).

## II.

All rules are subject to rulemaking petitions under 5 U.S.C. § 553(e). Subsection 553(e) states, in full: "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." "[W]hen such petitions are denied," the agency must "give 'a brief statement of the grounds for denial.'" *Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4 (D.C. Cir. 1987) (quoting 5 U.S.C. § 555(e)). "These two provisions suggest that Congress expected that agencies denying rulemaking petitions must explain their actions." *Id.*

The right to petition for rulemaking under subsection 553(e) applies to all rules, without exception. By contrast, subsection 553(b), which requires a notice-and-comment process, expressly exempts interpretive rules, general statements of policy, and agency procedure rules. Subsection 553(d), which requires advance publication, expressly exempts interpretive rules and statements of policy.[5]

---

[5] The Service argues that interpretive rules and policy statements are exempt from all of section 553, including subsection 553(e). The Service does not explain the textual basis for its interpretation, and it cannot be squared with the statutory text. As noted above, both subsections 553(b) and (d) expressly exempt interpretive rules and policy statements. If interpretive rules and policy statements were not "rules," then those express exemptions would be superfluous. Likewise, if the express exemption in subsection 553(b) applied to all of section 553, the express exemption in subsection 553(d) would be superfluous. Additionally, subsection 553(a) expressly exempts certain military and agency management matters from the entire "section." The text of subsection

The statutory text is unambiguous. Further, the Attorney General's Manual on the Administrative Procedure Act confirms that the subsection 553(e) right to petition applies to all rules, including non-binding interpretive rules and policy statements. *See* U.S. Dep't of Justice, Attorney General's Manual On the Administrative Procedure Act (1947) at 38 (explaining that the right to petition under subsection 553(e) "applies not only to substantive rules but also to interpretations and statements of general policy.").[6] *See also* 1945 Senate Judiciary Report, S. Rep. No. 79-752 (1945) at 14 ("Where public rule-making procedures are dispensed with, the provision of subsections (c) and (d) [currently 553(e)] of this section would nevertheless apply.").

Additionally, the D.C. Circuit has noted that non-binding policy statements would be subject to rulemaking petitions under subsection 553(e). *Guardian Fed. Savs. & Loan Ass'n v. Fed. Savs. & Loan Ins. Corp.*, 589 F.2d 658, 668 (D.C. Cir. 1978).[7] And, in other cases, that court has reviewed

---

553(a) confirms that Congress knew how to exempt certain types of rules from the entire section but chose not to do so for interpretive rules and policy statements.

[6] "The courts have given deference to the interpretations of the Attorney General's Manual 'because of the role played by the Department of Justice in drafting the legislation.'" *Guardian Fed. Savs. & Loan Ass'n v. Fed. Savs. & Loan Ins. Corp.* 589 F.2d 658, 665 (D.C. Cir. 1978) (quoting *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc*., 435 U.S. 519, 546 (1978), and collecting cases).

[7] In *Guardian*, the court held that the challenged rules were a combination of non-binding procedural rules and policy statements, and therefore expressly exempt from the notice-and-comment requirements of subsection 553(b). 589 F.2d at 665–68. In so holding, the court noted

denials of rulemaking petitions for non-binding interpretive rules, policy statements, and agency procedure rules. *See Coll. Sports Council v. Dep't of Educ.*, 465 F.3d 20, 22-23 (D.C. Cir. 2006) (holding denial of § 553(e) petition to repeal and amend "guidance" or "policy interpretation" was subject to judicial review under the standards of review for refusals to institute rulemaking proceedings set forth in *Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*, 883 F.2d 93 (D.C. Cir. 1989), and *WWHT, Inc. v. FCC*, 656 F.2d 807, 809 (D.C. Cir. 1981));[8] *ITT World Communications, Inc. v. FCC* , 699 F.2d 1219, 1226 and 1245-46 (D.C. Cir. 1983), *rev'd on other grounds*, 466 U.S. 463, 468 (1984) (reviewing denial of rulemaking petition that requested issuance of "policy statement" regarding "the purpose of all [agency] meetings with foreign

---

that the non-binding policy statements would be subject to a subsection 553(e) petition. *Id.* at 668 ("[T]he interests affected [by the policy statements] would at least have the opportunity to invoke subsection 553(e) of the APA for a modification, an opportunity in effect to assure some agency consideration of comments.").

[8] In *College Sports Council*, the subsection 553(e) petition at issue was titled, "Petition To Repeal and Amend Guidance Issued Under 34 C.F.R. § 106.4(c) Concerning Equal Athletic Opportunity." 465 F.3d at 23. The court noted that the same guidance or "policy interpretation" was challenged in an earlier case, *National Wrestling Coaches Association v. Department of Education*, 263 F. Supp. 2d 82 (D.D.C. 2003), *aff'd*, 366 F.3d 930 (D.C. Cir. 2004). *See id.* at 22. In *National Wrestling*, the court characterized that challenged guidance as "policy statements," "interpretive rules," or "interpretive guidelines." 366 F.3d at 936, 939–40.

administrations" and procedural rules for such meetings (petition published at 77 F.C.C.2d 877 (1980))).[9]

## III.

A denial of a rulemaking petition is reviewable final agency action, even if the underlying rule is non-binding.

"The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting 5 U.S.C. § 704). "As a general matter, two conditions must be satisfied for agency action to

---

[9] The Service argues that subsection 553(e) authorizes petitions for binding, substantive rules only (*i.e.*, not interpretive rules, policy statements, or agency procedure rules). The Service does not identify any statutory text that supports its interpretation. The Service cites only out-of-context statements from inapposite and out-of-circuit cases that do not address or analyze the issue presented here. For example, the Service cites *National Wrestling*, 263 F. Supp. 2d at 128. In that case, the district court held it did not have jurisdiction to hear the plaintiffs' claim regarding policy guidance because the plaintiffs did not actually file a petition to amend or repeal that rule. *Id.* In the context of that discussion, the district court stated, without analysis, that "Section 553, by its terms, does not apply 'to interpretive rules, general statements of policy, or rules of agency organization, procedure or practice' unless notice or hearing is required by statute." *Id.* However, as discussed above, the quoted exemptions appear only in subsections (b) and (d), not subsection (e). On appeal, the D.C. Circuit put aside the question of whether the challenged rule was "the type of policy subject to the APA's petition requirements" because the plaintiffs' letter could not "be construed as a petition for repeal or amendment." 366 F.3d at 948. The court noted, however, that the plaintiffs had subsequently filed "a proper petition" that was still pending. *Id.* at 948–49. After the agency denied that petition, the plaintiffs filed another complaint, and the D.C. Circuit squarely held that the agency's denial of that petition to amend or repeal the policy guidance was subject to judicial review. *Coll. Sports Council*, 465 F.3d at 23.

be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177–78 (internal citations omitted).

"An agency's denial of a petition for rulemaking constitutes final, reviewable agency action, except where there is evidence of a clear and convincing legislative intent to negate review." *Weight Watchers Int'l, Inc. v. FTC*, 47 F.3d 990, 992 (9th Cir. 1995) (quoting *Clark v. Busey*, 959 F.2d 808, 811 (9th Cir. 1992) (quoting *WWHT*, 656 F.2d at 809)).

"Where an agency's refusal to institute a rulemaking is held to be final agency action subject to judicial review, it is reviewed under the arbitrary and capricious standard of 5 U.S.C. § 706(2)(A)." *Id.* at 992. When a petitioned-for rule addresses a discretionary policy, the scope of review very narrow, but review is not precluded. *See WWHT*, 656 F.2d at 817 ("[W]here the proposed rule pertains to a matter of policy within the agency's expertise and discretion, the scope of review should perforce be a narrow one, limited to ensuring that the [agency] has adequately explained the facts and policy concerns it relied on and to satisfy ourselves that those facts have some basis in the record." (internal quotation marks and citation omitted)).

In this case, there is no evidence of a clear and convincing legislative intent to negate review of the Service's denial of rulemaking petitions, either generally or when the petition concerns a recovery plan. Further, both *Bennett* requirements are satisfied.

First, there is no dispute that the Service's denial of the Center's rulemaking petition is a final decision that is neither tentative nor interlocutory.

Second, the Service's denial of the rulemaking petition is an action by which the Center's statutory right to petition under § 553(e) has "been determined." *Bennett*, 520 U.S. at 178. Because the Center petitioned for rulemaking pursuant to § 553(e), the "agency's refusal to institute proceedings has sufficient legal consequence to meet the second criterion of the finality doctrine." *Cap. Network Sys. v. FCC*, 3 F.3d 1526, 1530 (D.C. Cir. 1993) (internal quotation marks and citation omitted) (holding denial of rulemaking petition was final agency action).[10]

The majority concludes that "[t]he Service's denial of the Center's petition to amend the Plan is not final agency action because, like adoption of the Plan itself, it does not . . . alter the rights of the Center." Majority at Section III.C. However, the denial of the Center's petition does not need to "alter" the rights of the Center to be final agency action. To be final agency action, an agency's action need only "determine" a "right," *Bennett*, 520 U.S. at 178, for example, by "deny[ing]

---

[10] The district court's Article III standing analysis in *National Wrestling* (which the D.C. Circuit affirmed) supports the conclusion that the denial of a rulemaking petition has sufficient legal consequence to satisfy the second *Bennett* criterion, even if the underlying rule is non-binding. *See* 263 F. Supp. 2d at 126. In that case, the plaintiffs alleged that they had filed a rulemaking petition to amend or repeal certain interpretive rules. Assuming that allegation to be true, the court concluded that the plaintiffs had standing, because "an improper denial of a petition brought under 5 U.S.C. § 553(e) constitutes a concrete and particularized injury, directly caused by the agency to which the petition was addressed, and redressable by this Court through remand to the agency for proper consideration of the petition." *Id.*

a right." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006).[11] Here, the Service determined the Center's statutory right to petition by denying it.

Ignoring the fact that the Service's action determined the Center's right to petition, the majority concludes that the Service's denial of the Center's rulemaking petition is not final agency action because the petitioned-for rule, the Recovery Plan, is non-binding. Although this Circuit apparently has not had occasion to review an agency's denial of a rulemaking petition for a non-binding rule, the D.C. Circuit has. In *College Sports Council*, the court held that an agency's denial of a petition to amend or repeal "a policy interpretation," which the agency characterized as "guidance," was subject to judicial review. 465 F.3d at 22-23. *See also ITT World Communications*, 699 F.2d at 1226 (reviewing denial of petition for policy statement).[12]

---

[11] In *Oregon Natural Desert*, we held that the *Bennett* test's second prong does not require "alteration" of a "legal regime." *Id.* at 986. We further explained, "Courts have consistently interpreted *Bennett* to provide several avenues for meeting the second finality requirement. We have held that the general rule is that administrative orders are not final and reviewable unless and until they impose an obligation, deny a right, or fix *some* legal relationship as a consummation of the administrative process. The legal relationship need not alter the legal regime to which the involved federal agency is subject." *Id.* at 986-87 (emphasis in original) (internal quotation marks and citations omitted).

[12] The majority contends this dissent's reliance on *College Sports Council* and *ITT World Communications* is misplaced, asserting that the rulemaking petitions in those cases "directly affected the obligations of regulated parties, including the petitioner." Majority at Section III.C & n. 3. I disagree with the majority's descriptions of those cases, but more

To reach the opposite conclusion, the majority focuses on the wrong action: Instead of asking whether the agency's denial of the Center's rulemaking petition satisfies the *Bennett* criteria, the majority asks whether "the adoption of a recovery plan" satisfies the *Bennett* criteria. Majority. at Section III.B.[13] But the Center is not asking us to review the Recovery Plan directly. It is asking us to review only the Service's decision to deny its petition.

The majority cites no case in which a court has treated the question of whether the underlying rule is "binding" as dispositive of, or even relevant to, the question of whether

importantly, the majority ignores that the rulemaking petitions at issue in those cases addressed non-binding rules. *See Coll. Sports Council*, 465 F.3d at 23 (petition asked agency to repeal rule characterized as "policy statements" or "interpretive rules"); *ITT World Communications*, 699 F.2d at 1226 (petition asked agency to adopt "rules of policy and procedure"). Policy statements, interpretive rules, and rules of policy and procedure are categorically "non-binding" rules under the APA. *See Perez*, 575 U.S. at 97, and *supra*, dissent Section I. According to the majority's analysis, the D.C. Circuit lacked jurisdiction to review the agency denials of the rulemaking petitions in those cases because a non-binding rule cannot have any legal consequence, and therefore, a denial of a petition for a non-binding rule cannot have any legal consequence, and therefore, such a denial cannot be final agency action.

[13] Because courts have held that recovery plans are non-binding, the majority asserts that a recovery plan, or an amendment thereof, cannot have *any* legal consequence. Majority at Section III.B. That assertion goes too far. As discussed further below, both binding and non-binding rules may have substantive effects; the difference between binding and non-binding rules is only a matter of degree. Because a "non-binding" recovery plan may have substantive effects, even under the majority's approach (ignoring the legal consequence of the denial of the rulemaking petition and instead looking only at the underlying rule), the Service's decision not to amend the Recovery Plan may have sufficient legal consequence to satisfy the second *Bennett* criterion.

the denial of the rulemaking petition is final agency action. To the contrary, the cases that address denials of rulemaking petitions focus exclusively on the denial of the petition. *See, e.g.*, *Coll. Sports Council*, 465 F.3d at 23; *Cap. Network*, 3 F.3d at 1530.

The majority asserts that "we must evaluate the Service's denial of the petition to amend the Plan using the same test applicable to a 'direct' challenge to the Plan." Majority at Section III.C. Although the *Bennett* test for "final agency action" is the same for both types of cases—a challenge to the denial of a rulemaking petition and a direct challenge to a rule—the *action* that must pass the test is different. The majority cites no authority for the proposition that, in a case challenging a denial of a rulemaking petition, the relevant action is *not* the denial of the petition but instead the underlying rule. The majority cites only cases that involved a direct challenge to a non-binding rule. *Id.* None of the cited cases involved denials of rulemaking petitions. And none conflated the action of denying a rulemaking petition with the underlying rule, as the majority does here.[14]

The majority also asserts that, if we accept the "proposition that the denial of a petition to amend a non-binding document is necessarily reviewable final agency action," then "the APA's requirement of final agency action would lose all meaning, as an applicant seeking review of agency decisions with no legally binding effect would

---

[14] The majority cites *Friends of the Wild Swan, Inc. v. Dir. of United States Fish & Wildlife Serv.*, 745 F. App'x 718, 720 (9th Cir. 2018); *Indep. Equip. Dealers. Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004); and *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 834 (9th Cir. 2021). Those cases addressed only whether a non-binding rule was, in itself, a final agency action.

merely have to style [their] request to the agency as a rulemaking petition." Majority at Section III.C. That dire prediction is unfounded. The only "request" at issue in this case is a petition to amend a "rule," as that term is defined by section 551(4), which the Center has a statutory right to file under subsection 553(e), and to which the Service has a statutory obligation to respond under subsection 555(e). Moreover, the scope of review for the denial of a rulemaking petition is substantively different from, and much narrower than, direct review of a rule. *Compare WWHT*, 656 F.2d at 810 (denial of rulemaking petition reviewed under arbitrary and capricious standard), *with S. Cal. All.*, 8 F.4th at 835 (direct challenge to rule seeking review for compliance with APA's notice-and-comment procedures and Clean Water Act).

As noted above, we review an agency's denial of a rulemaking petition under the arbitrary and capricious standard of 5 U.S.C § 706(2)(A), and that review is "extremely limited and highly deferential." *Compassion Over Killing v. U.S. FDA,* 849 F.3d 849, 854 (9th Cir. 2017) (internal quotation marks and citation omitted). "An agency's refusal to institute rulemaking proceedings is at the high end of the range of levels of deference we give to agency action under our 'arbitrary and capricious' review." *Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 599 F.3d 662, 667 (D.C. Cir. 2010) (internal quotation marks and citation omitted). Further, when a court concludes that an agency's denial of a rulemaking petition was arbitrary and capricious, the remedy is limited to remanding the matter to the agency to further explain or reconsider its decision to deny the petition. *See Am. Horse Prot. Ass'n* at 7 (recognizing that the usual remedy is remand for further explanation or reconsideration and an order directing agency

to institute rulemaking proceedings is "appropriate 'only in the rarest and most compelling of circumstances'" (quoting *WWHT*, 656 F.2d at 818)).

Finally, the majority's approach may have the unintended consequence of requiring courts to decide a difficult issue (whether the underlying rule is "binding") before deciding a relatively straightforward issue (whether the agency's denial of the rulemaking petition was arbitrary and capricious). As discussed above, review of an agency's denial of a rulemaking petition is highly deferential and relatively simple.[15] But there is no bright line between binding rules and non-binding rules—both may allow for some discretion and have some substantive effect. *See, e.g.*, *Guardian*, 589 F.2d at 667 ("A matter of judgment is involved in distinguishing between rules, however discretionary in form, that effectively circumscribe administrative choice, and rules that contemplate that the administrator will exercise an informed discretion in the various cases that arise."); *see also id.* at 668 (concluding rules were general statements of policy even though they had "some substantive impact"); *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046 (D.C.Cir.1987) ("[T]he mere fact that [an interpretive] rule may have a substantial impact does not

---

[15] Where an agency has refused to initiate rulemaking, "the 'record' for purposes of review need only include the petition for rulemaking, comments pro and con where deemed appropriate, and the agency's explanation of its decision to reject the petition." *WWHT,* 656 F.2d at 817–18.

transform it into a legislative rule." (internal quotation marks and citation omitted)).**[16]**

Consequently, it is notoriously difficult for courts to decide whether a rule is "binding" or "non-binding." *See, e.g.*, *Tel. Ass'n v. FCC*, 28 F.3d 1232, 1234 (D.C. Cir. 1994) (noting "the distinction between [general statements of policy and substantive rules] has not proved an easy one to draw"); *Am. Hosp. Ass'n*, 834 F.2d at 1046 ("[T]he spectrum between a clearly interpretive rule and a clearly substantive one is a hazy continuum[.]"); *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C.Cir.1984) (en banc) ("[T]he distinction between legislative and nonlegislative rules has been described as 'enshrouded in considerable smog.'" (citation omitted)); *Batterton*, 648 F.2d at 702–03 ("We would be less than candid if we pretended that the labels of 'legislative' and 'non-binding' rules neatly place particular agency actions within any particular category. Instead, the categories have 'fuzzy perimeters' and establish 'no general formula." (footnotes omitted)).

---

[16] Because the majority expresses "pragmatic" concerns, I note that several legal commentators have advocated for judicial review of denials of rulemaking petitions where the underlying rule is non-binding, for example, to prevent non-binding rules from becoming de facto substantive rules. *See, e.g.*, Sean Croston, The Petition Is Mightier Than the Sword: Rediscovering an Old Weapon in the Battles over "Regulation Through Guidance," 63:2 Admin. L. Rev. 381 (Spring 2011); Aram A. Gavoor & Daniel Miktus, Public Participation in Nonlegislative Rulemaking, 61 Vill. L. Rev. 759 (2016); William V. Luneburg, Petitioning Federal Agencies for Rulemaking: An Overview of Administrative and Judicial Practice and Some Recommendations for Improvement, 1988 Wis. L. Rev. 1, 25 (1988).

\*          \*          \*

In sum, I conclude that the Recovery Plan is a "rule" as that term is defined by the APA, and the Service's denial of the Center's rulemaking petition is final agency action subject to judicial review. Therefore, I would reverse and remand to the district court to review the denial of the rulemaking petition for abuse of discretion under the highly deferential arbitrary and capricious standard.